My name is Samuel Ogbu and I represent the petitioner in this case. First, let me first start by tendering my apologies for the quality of the brief I filed in this case. I will do my best to state my position and the position of my client hopefully more clearly. We've read the materials in the IJs. What do you want to talk to us about this morning? Thank you, Your Honor. Your Honor, I have a few issues that I think is pertinent in resolving the issues here. First of all, Your Honor, I want to start by saying that in all the materials in the IJ's decision and also, unfortunately, the summary decision of the BIA, that there was no analysis whatsoever of the legal issue of crime involving moral aptitude. So it is difficult for us to determine what factors and what elements the immigration judge used in finding that my client's conviction for Penal Code 136B2 is a crime involving moral aptitude. The immigration judge referenced 136.1B1 and doesn't reference B2. What's the effect of the IJ considering the wrong crime? Actually, I was about to say that, but it throws off essentially his conclusion because he was encountering something different from what my client was convicted. It's important to know that the two sections, the one he encountered and the one that my client was actually statute in 136.1 talks about maliciousness and also talks about willfulness, which the statute also went ahead to define in 136. But if you look at 136.1B2 and even B1 that the judge looked at, it clearly talks about an attempt but never talked about the maliciousness which would make it an attempt to vex, an attempt to annoy, an attempt to which would make it really a base and deprave conduct on the part of my client. I would also want to point out that can I stop you there? I'm having a hard time understanding what the practical difference is between 1 and 2. It seems to me that what is punished under 136.1 clause B, little b in parenthesis, is the crime of essentially attempting to dissuade, in this case, the victim or the complaining party from proceeding with the complaint or the prosecution of the crime. And I think that that's the difference between the two. So what difference does it make whether the object of the dissuasion is directed to a peace officer, a judge, or it relates to a complaint, an object of the dissuasion? In terms of the moral turpitude analysis. Okay. I would venture to say that the practical difference here is that in the B1, I will assume that the report may have been made already. But in the B2, it talks about causing a complaint to be filed. And I'd like to say that when you look at the B2, it talks about causing a complaint to be filed. And I'd like to say that when you look at the B2, it talks about causing a complaint to be filed. And I'd like to say that when you look at the age of the victim that was dissuaded, it seems unlikely that the victim could have done what, assuming my client did not attempt, that the victim is able to have done what is contemplated, which my client has been alleged to have prevented him or attempted to prevent him from doing. I think your point, as I understood it earlier, was that the IJ focused on Clause 1, when in fact the conviction was Clause 2. Is that correct? That's correct. But for purposes of the moral turpitude analysis, and again, recognizing that the record is pretty bleak on that score, isn't the morally turpitude analysis, Hominous Behavior, the dissuasion that is referenced in sub-Clause B above, really doesn't matter whether the object of the dissuasion is the officer who took the report or the judge who's hearing the case. If the point of the dissuasion is to obstruct the prosecution or the case from going forward, isn't the critical point that we focus on here sub-Clause B and it doesn't make any difference whether it's one or two? Well, you know, it would have been easier for us to make that leap, for me to make that leap. But the problem is that the judge did not offer any basis for his analysis. And had he done that, perhaps used either the categorical approach or used the modified approach, then we would be able to know what issues, what facts he used. But maybe I'm not making my question clear. As I understand your argument, you think for purposes of moral turpitude analysis, it makes a difference as to who the object of the dissuasion was directed toward. Is that right? Actually, I don't think that. I think that it makes a difference the conduct that the dissuasion tried to achieve. In this case, cussing. If the object of the conduct is to prevent a prosecution, either prevent a victim from completing the filing of a report or a complaint with the police, or dissuading the victim from actually appearing at the trial and testifying against the person who's already been charged, what practical difference does it make from a moral turpitude analysis if we're looking at the turpitudinous behavior as being the obstruction of the prosecution of the case? I would first start by saying that the section under which my client was convicted is clear. And for whatever reason, the judge used the wrong one. That's a factor in analyzing the propriety of his decision. However, going to your question. I guess my response or my question for you is, so what? The fact that he focused on Clause 1 instead of Clause 2 doesn't really matter if your real objection is this is not a crime of moral turpitude. And so in order to answer that question, we look at what the statute declares the morally turpitudinous conduct to be, which, as I read it, is the dissuasion itself. Well, I wouldn't say that this is the most important aspect of my case. I wouldn't want to say that. I think in some of the records, the judge actually also admitted 7-9, so I imagine that he read it. It's the 7-9. I also, there's records the way he talked about the right of the right section. However, in the decision, it may have been an error. But I wouldn't want to say that's the key thing in my case. Because, like you rightly said, it is the dissuasion. However, I think there has to be distinction. Because when you look at the entire statute, it talks about what is willful, what is malicious. And it talks about what is an attempt. Without the willfulness and the malicious aspect of the statute. Which, to me, leads me to think that the statute covers both crimes that could be crime involving moral turpitude and crimes that could not be. And that's why I want to point out that the crime for which my client was convicted is not. Because the essential element of what becomes crime involving moral turpitude is missing. It is not. I wouldn't say that it was malicious. I wouldn't say that it was intentional. Even though he was charged as such. But the actual section does not call for that. And secondly, I think that the court, the immigration court also, could have looked at the 136.183. I think that the immigration court could have looked at the 136.183. I think that the immigration court could have looked at the 136.183. I think that the immigration court could have looked at the 136.183. Which offers a presumption of lack of malice if the victim is a family member. And perhaps if the record were explored, if we had enough record from the trial, the criminal trial, to show whether he was trying to protect his child. But that's a defense, right? That's a statutory defense to the charge that he might have had he gone to trial and contested the charge? But he pled guilty, did he not? He did. So how does subclause three help him? It might have been a defense that was available to him, but he waived it when he pled guilty. Well, I would think that the presumption, it creates some presumption that perhaps, because this is in a family situation, that he could have acted to protect his child. And also creates, again, goes to explain that maybe this is not really such a grave and difficult situation. And that perhaps that could have been a pre-convict that he engaged in. Thank you, counsel. Your time has expired. Good morning, your honors. Ann Varnon for the respondent, attorney general. Your honor, this case is a one-issue, one-petitioner case. I'm sorry if our brief was misleading in that respect regarding to the two petitioners. There's only one petitioner involved and one question. And the standard is it's a legal question, which should be reviewed with de novo review with deference to the agency. And it is our position that section 161.1 categorically involves a crime involving moral turpitude. Well, since he wasn't convicted of that, how does that help you? Well, 136.1B, either one or two, is what he was convicted of. I thought you were addressing the first subsection and talking about that. But you can talk about either one you want. But the IJ, whether it was a typographically or not, only addressed the first subsection, right? That's correct. I guess at the onset, what do we make of that? Well, I don't think the court should make anything of it, because as this court has pointed out in the past, the plain language of the statute, in this case you have intimidation of witnesses and victims. That's 136.1. That's the title. And 136.1, the immigration judge did look at both the nature and the definition. So the immigration judge did look to the definition of the crime and the nature of the crime, and determined that it was a crime involving moral turpitude. I think this is a harmless error. Don't we have to give effect to what the basis on which the IJ decided? Can we find a harmless error? I think that we can find a harmless error in this case, because I believe either one or two is obstruction of justice. And that has been held for centuries to be a crime of moral turpitude. And by the Supreme Court of our country and by the Board of Immigration Appeals opinions relating to concealment and obstruction of the process of the courts, which is a duty that any citizen owes to society. Are you familiar with the Ninth Circuit decision in Navarro-Lopez? Yes, Your Honor. And that sets out what the Ninth Circuit sees as being a crime of moral turpitude, a structure of analysis. How does that apply to this particular offense? Well, Your Honor, honestly, I think that the case of Goldenstein that the Ninth Circuit decided is more in keeping with the Woodcock case, and we covered this case because we have intent, which we believe is implicit in any kind of concealment crime, and then in the nature of the crime as well, which is the obstruction of justice crime. And we believe that that is more applicable to this case than looking at the nature of the crime. And Taylor, the Supreme Court, said that you look to see whether the statute categorically involves a crime involving moral turpitude. And in this case ---- What meaningful difference is there between being an accessory after the fact and this kind of crime? Well, you said in Navarro-Lopez that accessory after the fact was not categorically a crime of moral turpitude. It depended on the circumstances, so you had to use the modified categorical approach. What's really different about being an accessory as opposed to someone who's dissuading someone from testifying on a categorical basis? I think they intend to defraud. But that's not in the statute. It's not in the statute. But that was exactly the example given by the government in Navarro-Lopez. They said concealment after the fact was a crime of moral turpitude. And that was the argument we rejected in Navarro-Lopez. So how is this any different? Well, this is concealment before the fact, I guess, in that there is an intent to ---- We think that intent can be read into the statute because ---- But it's not in the statute. It doesn't say fraud. It doesn't say ---- But courts have said that fraud or, in this case, the nature of the crime that the immigration judge talked about, the obstruction of justice. And courts have read intent and fraud, fraudulent intent into statutes and to reach the crime of moral turpitude finding. And we believe that that is proper in this case because the statute, even though it doesn't expressly say intent, it does ---- It's inherently fraudulent to try to deceive the public. But I think there are a lot of different circumstances. And that's the point of the categorical approach. For example, on the most extreme circumstances, you have somebody threatening a witness and causing them not to testify. Now, that probably goes on the scale of moral turpitude to your argument. On the other hand, you may have a parent saying to a child, look, here are the risks of going to court. And do you really want to file a complaint about this? And people have those discussions every day. And that isn't necessarily a crime of fraud. Police officers have those discussions with victims. Do you really want to testify? Do you really want to make a complaint? And if you're saying technically that would fall under this statute. But in terms of an analysis of moral turpitude, it might be different. Would you agree? I hate to ask you to repeat that long question again. But let's take the example of when a police officer or a counselor talks to a crime victim and says, look, if you're going to testify, you're going to be subject to cross-examination. You're going to do this, do that. It's what, well, at least in my limited prosecutorial experience, that's what I would do with a witness before putting them on to make sure they wanted to make a complaint. Now, under the statute, that's crime. But it might not be morally turpitudinous, if you want to use that phrase. Well, the board has generally said that these crimes are base and vile and offend society. And I don't think that under the categorical approach that we can look to the particular conduct of this case, of this defendant in this case, we have to look to the statute. And we believe that it categorically qualifies as a crime involving moral turpitude. Can I ask you about your statement about the board having looked at these sorts of issues? And there's no case that addresses 136.1 that the board has ruled on. Is that correct? I believe that that's correct, Your Honor. So under our Chen case, where we've said that streamlining is not appropriate, where the precise legal issue wasn't addressed by the board, why was the streamlining appropriate in this case? In our Chen case, a decision was made based on a BIA precedent, but it wasn't the precedent didn't address the precise legal issue, and we said it was inappropriate for the BIA to streamline its decision. I see, Your Honor. Okay. I'm not familiar with that case right off the top of my head. But I think in this case, where the board has talked about obstruction of justice being a crime of moral turpitude, that there is precedent, whether it's under the statute or under this exact statute, there is precedent, longstanding precedent with the board that obstruction of justice constitutes a crime involving moral turpitude. So I think streamlining was appropriate then. So your argument is that we owe Chevron deference to a determination that the board has not yet made if it hasn't examined 136? I think what Judge Akuta is saying is why shouldn't we send this back and let the agency take the board take a closer look at it, given the fact that there is no precedent directly on point? Well, that would be the most that the court could do in this case, because there would be on remand, if it was open to further proceedings, including whether the petitioner met the exceptional or extremely unusual hardship standard, the immigration judge and the board could also look at whether there were any discretionary factors in this case, like the ---- I think we're talking about two different things here. Let me segregate it out so you can give an answer. The theory of Chen is that when the board hasn't dealt with a legal issue, it's inappropriate to streamline. Now, in that case, the difference was we were talking about a board decision. The board, we were dealing with a board decision and not a statute. But we said, look, it shouldn't have streamlined, because the question of whether someone could be paroled under this regulation is something the board hadn't addressed. It was inappropriate to streamline. The argument was made by both parties, well, you should decide this in the first instance here. And we said, no, let's let the agency decide. And the vehicle for doing that was sending it back. That's just on the legal issue. And I think that's what Judge Tallman and Judge Ikuda's question is. Because the board hasn't addressed this, why shouldn't we say the board shouldn't streamline it and send back the legal question? Well, I believe the court has held that there's no jurisdiction over the issue of streamlining, whether or not streamlining is appropriate. Now, Chen says that there is in this circumstance. I see. Under that precedent, then I would say that it would be another possibility then for remand. Now, if you wanted a fuller remand, the appropriate remedy would be to say, well, the IJ got the statute wrong. We're going to send the whole thing back, and everything is open at that point. Do you see the difference? Yes. Now, given that election, which would you urge the court to do if we were inclined to grant the petition for review? On remand, I would go back to the immigration judge to clear up the matters that we've talked about today regarding the statute, whether it's under A or B, I believe, one or two. But the third option, then, is to accept your argument that there's no difference, take it straight up, and decide the legal issue of whether or not both sections and the whole statute categorically constitute a crime of moral turpitude. That's our third option. That would be the option that we would prefer, and secondly, to remand to the immigration judge, and thirdly, the election. All right. Thank you, counsel. Counsel, I just have one question. I was just curious what the status is, if any, on Navarro-Lopez. Is the department talking to the solicitor general on reviewing that case further? I would have to check on that and get back with the court, but I will notify the court of that, if he would like. No, that's all right. I just wondered if you knew. No, I don't know. Okay. Thank you.
judges: Thomas, Tallman, Ikuta